331 F.3d 13
 Andrew PARKER; Eric DeBrauwere, Plaintiffs-Appellants,
v.
TIME WARNER ENTERTAINMENT COMPANY, L.P.; Time Warner Cable of New York City, a Division of Time Warner Entertainment Company, L.P., Defendants-Appellees.
National Cable & Telecommunications Association, Amicus Curiae.
 Docket No. 01-9069.
 United States Court of Appeals, Second Circuit.
 Argued: September 12, 2002.
 Decided: June 2, 2003.
 
 1
 Appeal from the United States District Court for the Eastern District of New York, Glasser, Senior District Judge.
 
 
 2
 Samuel Issacharoff, New York, NY, (Roger W. Kirby, Peter S. Linden, Daniel Hume, Kirby McInerney & Squire LLP, New York, NY; Steve W. Berman, George W. Sampson, Hagens Berman, LLP, Seattle, WA; Jonathan W. Cuneo, Michael G. Lenett, The Cuneo Law Group, P.C., Washington, D.C.; James M. Beaulaurier, Seattle, WA, on the brief), for plaintiffs-appellants.
 
 
 3
 Jonathan D. Thier, Cahill Gordon & Reindel, New York, N.Y. (Landis C. Best, David G. Montone, Cahill Gordon & Reindel, New York, NY; Ronald L. Plesser, Emilio W. Cividanes, Piper Marbury Rudnick & Wolfe, LLP, Washington, D.C., on the brief), for defendants-appellees.
 
 
 4
 Michael S. Schooler, Washington, D.C., for amicus curiae.
 
 
 5
 Before: NEWMAN and F.I. PARKER, Circuit Judges; and UNDERHILL,* District Judge.
 
 
 6
 Vacated and remanded for further proceedings. Judge JON O. NEWMAN concurs with a separate opinion.
 
 
 7
 UNDERHILL, District Judge.
 
 
 8
 This appeal raises issues concerning the appropriateness of certifying a plaintiff class of potentially millions of cable television subscribers in a case seeking various forms of relief, including injunctive relief, actual damages, and statutory damages under the Cable Communications Policy Act of 1984. These issues arise from decision of defendants' motion to deny class certification as a matter of law, which was issued before discovery on issues affecting class certification. For the reasons that follow, we vacate the order appealed from and remand for further proceedings.
 
 
 Background
 
 
 9
 Andrew Parker and Eric DeBrauwere (collectively "Parker") subscribe to cable television services provided by Time Warner Cable, a division of Time Warner Entertainment Co. ("Time Warner"). Parker claims that Time Warner violated the provisions of the Cable Communications Policy Act of 1984 ("Cable Act"), 47 U.S.C. § 521 et seq., and several state consumer protection laws, by selling and disclosing personally identifiable subscriber information to third parties, and by failing clearly and conspicuously to inform the subscribers of such disclosure, as required by the Cable Act. Parker seeks monetary relief in the form of statutory damages, actual damages, punitive damages and attorneys' fees, as well as declaratory and injunctive relief to prevent further Cable Act violations.
 
 
 10
 Parker commenced this action in the Eastern District of New York on June 16, 1998. On October 30, 1998, appellants filed an Amended Class Action Complaint. In September 1999, Parker served extensive discovery requests, to which Time Warner objected in October 1999. On November 8, 1999, the District Court issued an "Amended Memorandum and Order Denying Defendant's Motion to Dismiss Complaint," rejecting Time Warner's contention that the Amended Complaint failed to state a cause of action under the Cable Act. In issuing that order, Judge Edward R. Korman relied upon the allegations of the Amended Complaint that Time Warner: (1) failed to provide adequate notification to subscribers that it was selling information gathered from third-party sources along with information it collected directly from subscribers; and (2) improperly disclosed subscribers' programming selections without first providing a valid means for subscribers to opt out. Prior to the issuance of the written ruling on its motion to dismiss, Time Warner changed its privacy notice to provide a warning regarding the potential for disclosure of personally identifiable information, as well as a means for subscribers to opt out of releasing their programming selections to third parties.
 
 
 11
 Soon after the ruling on its motion to dismiss, Time Warner moved for an order denying class certification as a matter of law. In January 2000, Magistrate Judge Joan M. Azrack, to whom various discovery disputes had been referred, stayed discovery pending a ruling on Time Warner's motion to deny class certification. Later that month, Senior District Judge I. Leo Glasser stayed determination of Parker's "contemplated motion for class certification" and confirmed that discovery remained stayed pending decision of Time Warner's motion. As a result of the court's rulings, no motion for class certification has been filed and no discovery establishing the size of the prospective plaintiff class or the extent of the alleged statutory violations has occurred. Parker has indicated in pleadings that he would, under Rule 23(b)(2) and 23(b)(3), pursue class certification for a class of Time Warner cable subscribers whose privacy interests allegedly were violated by the disclosure and sale of subscriber information.
 
 
 12
 On October 2, 2000, Magistrate Judge Azrack issued a Recommendation and Report ("R & R") on Time Warner's motion to deny class certification. Parker v. Time Warner Entertainment Co., L.P., 2000 U.S. Dist. Lexis 20131 (E.D.N.Y.2000). In the R & R, Judge Azrack considered whether class certification was appropriate under Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, and recommended that the District Court grant in part Time Warner's motion to deny class certification as a matter of law. Although Judge Azrack assumed that Parker would be able to satisfy the threshold requirements for class certification under Rule 23(a), ultimately she concluded that certification of the damages claim under 23(b)(2) should be denied because Parker's request for monetary relief predominated over the claim for injunctive relief. Judge Azrack recommended against certification of a class under Rule 23(b)(3) principally on the ground that a class action was not the superior means of adjudicating this controversy. Concerning Parker's request for injunctive and declaratory relief, Judge Azrack recommended that Rule 23(b)(2) certification be granted, noting that, under Rule 23(c), a district court is authorized "to determine which classes and issues, if any, should be appropriately certified." Id. at *8. Finally, Judge Azrack recommended that the District Court decline to exercise supplemental jurisdiction over the pendent state law claims, which arose under the deceptive practices statutes of twenty-three states.
 
 
 13
 Parker objected to the R & R, and on January 9, 2001, Judge Glasser entered an order adopting the recommendations to limit class certification under Rule 23(b)(2) to Parker's declaratory and injunctive claims, to deny class certification under Rule 23(b)(3), and to decline supplemental jurisdiction over the state law claims. Parker v. Time Warner Entertainment Co., L.P., 198 F.R.D. 374 (E.D.N.Y.2001). Judge Glasser noted that he had precluded Parker from filing a motion for class certification, but that the Amended Complaint indicated that certification would be sought "pursuant to Rules 23(b)(2) and (3) for a plaintiff class of approximately 12 million cable subscribers in 23 states whose privacy interests allegedly were violated by defendants' disclosure and sale of subscriber information. Defendants argue that certification should be denied as a matter of law under both subdivisions." Id. at 376 (citation to Amended Complaint omitted). Judge Glasser also explained that, because "[n]o discovery has been conducted concerning the purported class," Parker contended that the "motion for denial of certification should be viewed as a premature motion to dismiss under Rule 12(b)(6) and that defendants carry the burden of proving why a class action is not warranted." Id. The District Court rejected that argument, holding that "[b]efore a plaintiff moves for class certification, a defendant may `test the propriety of the action' by a motion for denial of class certification," and that "the burden of establishing the propriety of a class action remains with the plaintiff." Id. (citations omitted).
 
 
 14
 Judge Glasser began his analysis of the motion to deny certification under Rule 23(b)(2) by recognizing that certification under that rule "is only appropriate for class actions where the relief sought is exclusively or predominantly declaratory or injunctive." Id. at 377. He cited the Fifth Circuit's decision in Allison v. Citgo Petroleum Corporation, 151 F.3d 402 (5th Cir.1998), for the proposition that the "purpose of Rule 23(b)(2)'s predominance requirement is to ensure a degree of cohesiveness that would otherwise be easily disrupted when a plaintiff class seeks monetary remedies, since monetary remedies `are more often related directly to the disparate merits of individual claims.'" Id. at 378 (quoting Allison, 151 F.3d at 413). "`Ideally, incidental damages should be only those to which class members automatically would be entitled once liability to the class (or subclass) as a whole is established.'" Id. at 378-79 (quoting Allison, 151 F.3d at 415).
 
 
 15
 In determining whether the instant case conformed to the predominance standard of Rule 23(b)(2), Judge Glasser recognized that, although the court in Arnold v. United Artists Theatre Circuit, Inc., 158 F.R.D. 439 (N.D.Cal.1994), suggested that Rule 23(b)(2) certification "may be appropriate for statutorily mandated individual damages awards, the statutory damages claim here is but one aspect of plaintiffs' request for monetary relief. Thus it cannot be said that the entirety of plaintiffs' damages claim is `incidental' to their request for injunctive relief." Parker, 198 F.R.D. at 381. Judge Glasser adopted the recommendation that Parker's damages claims not be certified, noting that the "fact that the bulk of damages sought by plaintiffs are not incidental to the injunctive relief requested"[1] suggests that Arnold "does not compel certification here." Id.
 
 
 16
 Time Warner argued in the district court that "certification under [Rule] 23(b)(3) should be denied as a matter of law because the highly individualized nature of the alleged privacy violations destroys the commonality of issues required by [Rule] 23(b)(3) and because allowing plaintiffs to proceed on their claims through a class action would be unduly burdensome to the parties and the court." Id. In short, Time Warner asserted that neither the commonality requirement nor the superiority requirement of Rule 23(b)(3) could be met in this case. The District Court cited Wilson v. American Cablevision of Kansas City, 133 F.R.D. 573 (W.D.Mo.1990), as the only case to consider whether a class action is the superior vehicle for litigating a violation of section 551(f) of the Cable Act. Focusing on the "disproportionality of a damages award that has little relation to the harm actually suffered," Judge Glasser followed the Wilson rationale that the class action suit was not intended "to turn what is fundamentally a consumer protection scheme for cable subscribers into a vehicle for the financial demise of a cable service provider that failed to comply with the technical aspects of that scheme." Parker, 198 F.R.D. at 384.
 
 
 17
 Judge Glasser also considered arguments that Judge Azrack had relied too heavily on manageability of the class action as a factor in determining the appropriateness of certification under Rule 23(b)(3). Although he conceded that manageability of the action was a serious consideration in a "case where potential class members total 12 million subscribers in 23 states," Judge Glasser concluded that other factors had been considered and that Judge Azrack's recommendation had not "improperly relied on manageability alone in denying certification." Id. at 385.
 
 
 18
 Judge Glasser adopted Magistrate Judge Azrack's recommendations on every issue, including whether to decline supplemental jurisdiction over the state law claims in the Amended Complaint. Accordingly, the District Court issued an order limiting class certification under Rule 23(b)(2) to plaintiffs' request for declaratory and injunctive relief and denying certification under Rule 23(b)(3). On September 26, 2001, this Court granted Parker's petition pursuant to Rule 23(f) for leave to appeal the District Court's order. Parker seeks relief from so much of the District Court's order as precludes certification of claims for incidental monetary damages under Rule 23(b)(2) and as denies class certification under Rule 23(b)(3).
 
 
 Discussion
 
 
 Standard of Review
 
 
 19
 The standards governing review of class certification decisions under Rule 23 are well known. Generally, a district court's decision regarding class certification is reviewed for abuse of discretion. In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 132 (2d Cir.2001). An appellate court, however, is "noticeably less deferential ... when [the district] court has denied class status than when it has certified a class," Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 291 (2d Cir.1999) (quoting Lundquist v. Security Pacific Auto. Fin. Servs. Corp., 993 F.2d 11, 14 (2d Cir.1993)) (internal quotation marks omitted).
 
 
 20
 A district court vested with discretion to decide a certain matter is "empowered to make a decision — of its choosing — that falls within a range of permissible decisions. A district court `abuses' or `exceeds' the discretion accorded to it when (1) its decision rests on an error of law ... or a clearly erroneous factual finding, or (2) its decision — though not necessarily the product of a legal error or a clearly erroneous factual finding — cannot be located within the range of permissible decisions." Zervos v. Verizon New York, Inc., 252 F.3d 163, 168-69 (2d Cir.2001) (footnotes omitted) (emphasis in original). In contrast, de novo review is "review without deference," id. at 168, and is "`traditionally' associated with appellate assessments of a district court's legal conclusions." Id. at 168 n. 3 (quoting Pierce v. Underwood, 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)).
 
 
 21
 With these principles in mind, the standard of review applicable to class certification decisions can be succinctly summarized as follows: "We review class certification rulings for abuse of discretion. We review de novo the district court's conclusions of law that informed its decision to deny class certification." Turner v. Beneficial Corp., 242 F.3d 1023, 1025 (11th Cir.2001) (citations and quotations omitted) (reviewing class certification issues in a Truth in Lending Act statutory damages case).
 
 
 22
 
 Denial of Certification under Rule 23(b)(2)
 
 
 
 23
 Rule 23(b)(2) provides that an action may be maintained as a class action if, in addition to the threshold requirements of numerosity, commonality, typicality, and adequacy of representation, "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Generally, when monetary relief is requested in tandem with injunctive and declaratory relief, the court must determine whether the requested monetary relief predominates over the claims for equitable relief. The Advisory Committee note to Rule 23(b)(2) provides that the "subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominately to money damages." Fed.R.Civ.P. 23(b)(2), advisory committee note (1966).
 
 
 24
 At the time the District Court made the certification decision in this case, the Second Circuit had not yet established a standard for evaluating the predominance issue under Rule 23(b)(2). Judge Glasser therefore reasonably turned to the Fifth Circuit's decision in Allison v. Citgo Petroleum Corporation, 151 F.3d 402 (5th Cir.1998). Under the Allison predominance analysis, monetary relief predominates over equitable relief "unless it is incidental to requested injunctive or declaratory relief." Id. at 415. The Fifth Circuit characterized incidental damages as damages "that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief." Id. (emphasis in original).
 
 
 25
 The District Court granted class certification under Rule 23(b)(2), but limited certification to Parker's request for injunctive and declaratory relief, concluding that Parker's requested monetary relief predominated over the claims for injunctive and declaratory relief.[2] Magistrate Judge Azrack based her determination of predominance on the "realities of this litigation," R & R at *12, and on the perception that "plaintiffs' own words minimize the importance of injunctive relief to their complaint." Id. The Magistrate Judge concluded that "injunctive relief for violations of § 551 [of the Cable Act] could be as readily attained in an individual action as in a class action. Certainly any injunction requiring modification of the defendants' [privacy notice] could be made binding on all necessary parties by service of notice pursuant to Federal Rule of Civil Procedure 65." Id. at *14 (citation omitted). The District Court approved the recommendation to certify the claims for injunctive and declaratory relief but not any of the claims for monetary damages.
 
 
 26
 The District Court's decision creates a somewhat anomalous result. Having adopted the Magistrate Judge's recommendations, the District Court apparently agreed that it was unnecessary to certify the claims for injunctive relief, yet only those claims were certified. Moreover, having certified a Rule 23(b)(2) class for injunctive relief, the Court declined to certify even those monetary claims, notably the statutory damage claims, that Parker claims are incidental to the injunctive relief certified. In short, the District Court gave Parker only what the Court concluded Parker did not need.
 
 
 27
 When deciding the Rule 23(b)(2) issue, the District Court relied on Allison, which was the leading precedent on the issue of predominance analysis at the time the District Court ruled. The Second Circuit, however, has since addressed the standards for evaluating predominance for purposes of Rule 23(b)(2). In Robinson v. Metro-North Commuter R.R., 267 F.3d 147 (2d Cir.2001), the Second Circuit declined to follow the Allison predominance calculus, observing that it foreclosed Rule 23(b)(2) certification in all actions seeking actual damages "even if the class-wide injunctive relief is the form of relief in which the plaintiffs are primarily interested." Id. at 163 (internal quotation marks and citations omitted). Ultimately, the Robinson panel held that, when considering a motion for Rule 23(b)(2) certification of a claim seeking both injunctive relief and non-incidental monetary damages, "a district court must `consider[] the evidence presented at a class certification hearing and the arguments of counsel,' and then assess whether (b)(2) certification is appropriate in light of `the relative importance of the remedies sought, given all of the facts and circumstances of the case.'" Id. at 164 (quoting Hoffman v. Honda of Am. Mfg., Inc., 191 F.R.D. 530, 536 (S.D.Ohio 1999)).
 
 
 28
 Robinson holds that, when making an ad hoc determination, a district court "should, at a minimum, satisfy itself of the following: (1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits. Insignificant or sham requests for injunctive relief should not provide cover for (b)(2) certification of claims that are brought essentially for monetary recovery." Id.
 
 
 29
 Although it seems a bit unfair to Judge Glasser to characterize as an abuse of discretion his failure to anticipate the holding of Robinson, it does appear that his ruling on the Rule 23(b)(2) certification issue is inconsistent with the guidance provided by Robinson. Moreover, an appellate court is, of course, bound to apply the law as it exists at the time of appeal. See Harper v. Virginia Dep't of Taxation, 509 U.S. 86, 90, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993); Whitney v. Empire Blue Cross & Blue Shield, 106 F.3d 475, 477-78 (2d Cir.1997). By adopting the R & R, the District Court appears to have concluded that the request for injunctive relief here is "insignificant" and a "cover for [Rule 23](b)(2) certification of claims that are brought essentially for monetary recovery." Robinson, 267 F.3d at 164. Accordingly, it is not clear that Judge Glasser would have exercised his discretion to certify even the injunctive and declaratory relief claims under an ad hoc approach, if that approach caused him to conclude that the requested monetary relief predominates over the claims for equitable relief. Nor is it clear that Judge Glasser would have exercised his discretion to certify only the injunctive and declaratory relief claims under an ad hoc approach. Robinson suggests, without deciding, that incidental damages claims should ordinarily be certified along with injunctive and declaratory relief claims under Rule 23(b)(2), "because entitlement to [incidental] damages does not vary based on the subjective considerations of each class members' claims, but `flow[s] directly from a finding of liability on the ... claims for class-wide injunctive and declaratory relief.'" Id. at 165 (quoting Allison, 151 F.3d at 416.).
 
 
 30
 In light of Robinson, the District Court's decision of the Rule 23(b)(2) class certification issue must be reconsidered under the ad hoc approach. The Robinson ad hoc approach requires a district court to have detailed information about the circumstances surrounding the certification issue, and indeed, favors a class certification hearing prior to decision of a Rule 23(b)(2) certification motion. Accordingly, it is likely that at least minimal class discovery must be conducted in order to provide the court with the factual information necessary to decide whether or not to certify a Rule 23(b)(2) class.
 
 
 31
 Because the District Court decided Time Warner's motion on the basis of a legal standard later rejected by this Court and has not yet applied the broader approach later adopted by this Court, the decision to deny Rule 23(b)(2) class certification of the damages claims is vacated and remanded for further proceedings. On remand the District Court should conduct further fact finding and utilize the Robinson ad hoc approach in exercising its informed discretion whether to certify a class under Rule 23(b)(2) and, if so, whether to certify any aspect of the damages claims along with injunctive and declaratory relief.
 
 
 32
 
 Denial of Certification under Rule 23(b)(3)
 
 
 
 33
 Rule 23(b)(3) certification is appropriate where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). The rule requires consideration of various factors, including "the interest of members of the class in individually controlling the prosecution or defense of separate actions," Fed.R.Civ.P. 23(b)(3)(A), as well as "the difficulties likely to be encountered in the management of a class action." Fed. R.Civ.P. 23(b)(3)(D).
 
 
 34
 In denying class certification under Rule 23(b)(3), the District Court focused on the superiority of class litigation, the technical nature of the claimed violations of the Cable Act, and the impact of a potentially huge class. The Court was particularly concerned about a damages award that would be disproportionately large compared to the harm actually suffered by the potential class members. "[A] class action is not the superior manner of proceeding where the liability defendant stands to incur is grossly disproportionate to any actual harm sustained by an aggrieved individual." Parker, 198 F.R.D. at 383. Judge Glasser noted that there are due process concerns when the prospect of a stunningly large damages award looms as the result of technical violations of the Cable Act that affect potentially millions of subscribers. The District Court also noted that the case raised obvious manageability concerns: "Where a purported class promises to cause serious manageability problems, as would surely be the case where potential class members total 12 million subscribers in 23 states, defendants correctly point out that courts do not hesitate to dismiss based on manageability concerns alone." Id. at 384.
 
 
 35
 The difficulty we have with these conclusions is that they are based on assumptions of fact rather than on findings of fact. The District Court precluded any class discovery and even the filing of a motion for class certification. Thus, it remains unknown what class Parker would have sought to certify and the numbers of potential class members in that proposed class. Although the Amended Complaint alleges that the total number of Time Warner cable subscribers number about twelve million in twenty-three states, Parker has given no indication that he would actually seek to certify a class of all twelve million subscribers. Indeed, counsel for Parker stated in a hearing before Magistrate Judge Azrack that the number of potential class members could not be identified without discovery on the issue: "[T]here is simply no number because we've had no discovery as to the number of people who have actually been injured. We think it is a large number. We have no idea of whether it's thirteen million or one million or 1,000." George Sampson, Transc. of Motion Hearing (Sept. 9, 2000). Absent at least limited discovery concerning the composition of the class, the District Court had no evidence regarding the size of the recovery that Time Warner might face if the class claims were successful. Under the circumstances, the Court's conclusion that the size of the class would inevitably lead to "the financial demise" of Time Warner, Parker, 198 F.R.D. at 384, or even to significant manageability problems, was speculative.
 
 
 36
 We acknowledge Judge Glasser's legitimate concern that the potential for a devastatingly large damages award, out of all reasonable proportion to the actual harm suffered by members of the plaintiff class, may raise due process issues. Those issues arise from the effects of combining a statutory scheme that imposes minimum statutory damages awards on a per-consumer basis — usually in order to encourage the filing of individual lawsuits as a means of private enforcement of consumer protection laws — with the class action mechanism that aggregates many claims — often because there would otherwise be no incentive to bring an individual claim. Such a combination may expand the potential statutory damages so far beyond the actual damages suffered that the statutory damages come to resemble punitive damages — yet ones that are awarded as a matter of strict liability, rather than for the egregious conduct typically necessary to support a punitive damages award. It may be that the aggregation in a class action of large numbers of statutory damages claims potentially distorts the purpose of both statutory damages and class actions. If so, such a distortion could create a potentially enormous aggregate recovery for plaintiffs, and thus an in terrorem effect on defendants, which may induce unfair settlements. And it may be that in a sufficiently serious case the due process clause might be invoked, not to prevent certification, but to nullify that effect and reduce the aggregate damage award. Cf. State Farm Mutual Auto. Ins. Co. v. Campbell, ___ U.S. ___, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003) ("The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor."); BMW of North America, Inc. v. Gore, 517 U.S. 559, 580, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996) (noting that the "most commonly cited indicium of an unreasonable or excessive punitive damages award is its ratio to the actual harm inflicted on the plaintiff."). At this point in this case, however, these concerns remain hypothetical. There has been no class certification motion filed nor any actual evidence presented that raises a reasonable possibility that principles of due process may restrict an ultimate damages award. Accordingly, we decline to consider what limits the due process clause may impose.
 
 
 37
 Because the District Court decided Time Warner's motion without the factual support necessary to support its legal conclusions, the decision to deny Rule 23(b)(3) class certification is vacated and this matter is remanded for further proceedings. Once it has the benefit of Parker's motion to certify and the evidence relevant to that motion, the District Court will be in a position to exercise its informed discretion regarding the factors affecting Rule 23(b)(3) certification.
 
 
 Conclusion
 
 
 38
 The decision of the District Court is vacated and the matter is remanded for further proceedings. Each side shall bear its own costs.
 
 
 
 Notes:
 
 
 *
 Stefan R. Underhill of the United States District Court for the District of Connecticut, sitting by designation
 
 
 [1]
 Both the R & R and the decision appealed from misquote the Amended Complaint as alleging that the claimed statutory damages will amount to "at a minimum, hundreds of dollars." 198 F.R.D. at 381, 2000 U.S. Dist. LEXIS 20131, at *12. The cited paragraphs of the Amended Complaint actually allege statutory damages of "at a minimum, hundreds of millions of dollars." Amended Complaint, ¶¶ 77, 82
 
 
 [2]
 In making this determination, the District Court apparently assumed that statutory damages were incidental to the claimed injunctive relief, but also believed, incorrectly, that the actual damages sought by Parker far surpassed the statutory damages sought
 In opposing the denial of class certification, plaintiffs attempt to minimize the significance of their request for actual damages; read in conjunction with the Amended Complaint, however, it is clear that plaintiffs' request for statutory damages — which plaintiffs suggest will amount to, "at a minimum, hundreds of dollars" (Amended Complaint, §§ 77, 82) — constitutes but a tiny fraction of the total liability — which plaintiffs estimate will be in the ["]millions of dollars" (Amended Complaint, § 48) — they will ask the court to impose on defendants for the alleged Cable Act violations. The fact that the bulk of damages sought by plaintiffs are not incidental to the injunctive relief requested suggests that Arnold [v. United Artists Theatre Circuit, Inc., 158 F.R.D. 439 (N.D.Cal. 1994)], and the rationale for certification articulated therein, does not compel certification here.
 Parker, 198 F.R.D. at 381. The Amended Complaint actually sought not hundreds of dollars of statutory damages, but hundreds of millions of dollars of statutory damages. The Amended Complaint also sought millions of dollars of actual damages. Thus, based solely on the allegations of the Amended Complaint, it would appear that the claimed statutory damages far exceed the claimed actual damages.
 
 
 
 39
 JON O. NEWMAN, Circuit Judge, concurring.
 
 
 40
 A complaint alleging that up to 12 million cable television subscribers may each be entitled to receive at least $1,000 for violations of their statutorily protected privacy rights presents class action issues in a context unusual even for modern class action litigation. The Court remands for further consideration the District Court's decision to deny class certification. I concur in that decision and agree with most of Judge Underhill's opinion. I write these additional views to explore matters affecting both the (b)(2) and (b)(3) aspects of this case. I am somewhat doubtful about the possibility of a (b)(2) class that would include monetary claims but believe that there are strong arguments favoring a (b)(3) class. More specifically, I think a district court has discretion to certify a (b)(3) class with the aggregate amount of statutory damages limited substantially below what a literal application of the statute might seem to require.
 
 1. (b)(2) Issues
 
 41
 Rule 23(b)(2) of the Federal Rules of Civil Procedure provides that if the threshold prerequisites of Rule 23(a) are met, a class action may be maintained if
 
 
 42
 the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.
 
 
 43
 Fed.R.Civ.P. 23(b)(2). Although the text of the (b)(2) provision focuses on the appropriateness of injunctive or declaratory relief, the drafters contemplated that a claim for money damages would not necessarily preclude class certification under (b)(2). They cautioned, however, that "[t]he subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." Id. advisory committee's note (1966) (emphasis added). In a case such as the pending one, in which damages are sought in addition to injunctive and declaratory relief, the (b)(2) certification issue turns largely on whether the final relief relates "predominantly" to money damages.
 
 
 44
 Some courts have ruled that monetary relief predominates "unless it is incidental to requested injunctive or declaratory relief." Allison v. Citgo Petroleum Corp., 151 F.3d 402, 415 (5th Cir.1998); see also Barabin v. Aramark Corp., No. 02-8057, 2003 WL 355417, at *1-*2 (3d Cir. Jan. 24, 2003) (adopting the Allison approach to incidental damages); Jefferson v. Ingersoll International Inc., 195 F.3d 894, 898 (7th Cir.1999) (same). "Incidental" damages have been said to be those "that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief," Allison, 151 F.3d at 415, and "should at least be capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances," id.
 
 
 45
 As Judge Underhill's opinion recognizes, however, this Court has rejected the Fifth Circuit's limitation of (b)(2) to claims for "incidental" damages, see Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147, 162-67 (2d Cir.2001), outlining instead a broader "ad hoc approach," id. at 164, that obliges a district court to consider numerous factors in making the ultimate certification decision. Robinson explicitly contemplated the possibility that a(b)(2) class might be appropriate where monetary relief that is non-incidental would "present[] individual specific damage issues." Id. at 166. The risk that such certification might create due process concerns was answered by the possibility of "affording notice and opt out rights to absent class members for ... the damages phase of the proceedings." Id. In addition, Robinson held that damages relief obstacles to (b)(2) certification can be overcome by using the authority of Rule 23(c)(4) to certify a class action "with respect to particular issues," Fed.R.Civ.P. 23(c)(4), specifically, a class action with respect only to liability. Robinson, 267 F.3d at 167-69.
 
 
 46
 Although I am obliged to accept Robinson as the law of this Circuit, I think it risks some inappropriate uses of (b)(2) certification. That provision is designed for claims for injunctive and declaratory relief. The (b)(3) class, with its opt-out protection, is available for monetary claims. In some limited situations, a (b)(2) class might be appropriate notwithstanding a monetary claim, but, prior to Robinson, I would have thought such cases to be rare. See Ansoumana v. Gristede's Operating Corp., 201 F.R.D. 81, 88 (S.D.N.Y.2001) (observing that implementing opt-out rights in the context of Rule 23(b)(2) class is undesirable, and certifying the class under Rule 23(b)(3) instead). In particular, I question whether we risk unduly extending (b)(2) in cases with monetary claims by inviting district judges to use it and then protect claimants with individualized damage amounts either by affording them opt-out rights or certifying only the liability issue. Such devices strike me as a way of undermining the (b)(3) requirement that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).
 
 
 47
 Even though, in light of Robinson, the pending case must be remanded for further consideration of (b)(2) certification, I have additional concerns as to the guidance the Court offers to the District Court. Although recognizing that monetary claims need not be "incidental" for (b)(2) certification and correcting the District Court's view that the statutory damages sought were less than the non-statutory damages, the Court does not disturb the District Court's view that the statutory damages are incidental and all other damages are non-incidental. I disagree with both propositions and air the matter since it might affect the District Court's ultimate determination of whether the monetary claims predominate.
 
 
 48
 As to the statutory damages, I note preliminarily that it is by no means settled that a claim for statutory damages is per se incidental. Apparently no court has explicitly indicated that statutory damages are "incidental" for purposes of (b)(2) analysis. In Allison, the Fifth Circuit suggested (by citation to a case involving a claim for statutory damages) that such damages would qualify as incidental, see 151 F.3d at 415 (citing Arnold v. United Artists Theatre Circuit, Inc., 158 F.R.D. 439 (N.D.Cal.1994)), but Allison did not involve any such claim. Although some district courts have certified (b)(2) classes whose claims included statutory damages, see, e.g., Borcherding-Dittloff v. Transworld Systems, Inc., 185 F.R.D. 558, 565-66 (W.D.Wis.1999); Colorado Cross-Disability Coalition v. Taco Bell Corp., 184 F.R.D. 354, 361-62 (D.Colo.1999); Gammon v. GC Services Limited Partnership, 162 F.R.D. 313, 320-22 (N.D.Ill.1995); Arnold v. United Artists Theatre Circuit, Inc., 158 F.R.D. 439, 450-53 (N.D.Cal.1994), these courts have not described such damages as "incidental," and have considered a variety of factors in reaching the conclusion that statutory damages did not predominate.[1]
 
 
 49
 In the pending case, Judge Glasser, although undervaluing the statutory damages claim, seems to have accepted the plaintiffs' premise that a claim for statutory damages is "incidental" for (b)(2) purposes because it can be adjudicated without consideration of individual variations among the class members. In this case, the statute provides for actual damages with a minimum recovery of the greater of $1,000 per claimant or $100 for each day of violation. 47 U.S.C. § 551(f)(2)(A) (2000). Although the minimum statutory damages of $1,000 can be determined without considering variations among class members, the alternative minimum of $100 per day of violation will vary somewhat among class members, and any actual damages suffered by each class member will involve considerable variations. The plaintiffs purporting to represent the class seek to avoid such variations by limiting the recovery for each class member to the $1,000 lump sum. I doubt if they can so easily sacrifice the absent class members' claims for minimum daily damages or actual damages, at least without notice and some opportunity for those class members either to agree to accept only the $1,000 payment (or some specified lesser sum, see Part 2, infra) or to opt out of the class. Cf. Arnold, 158 F.R.D. at 464-65 (on motion for reconsideration after certifying (b)(2) class including a claim for statutory damages, ordering that absent class members receive notice and an opportunity to opt out).
 
 
 50
 As to the non-statutory damages, the District Court understood a major component of the claim to be disgorgement of the profits that the Defendant is alleged to have made by selling information in violation of the class members' statutorily-protected privacy rights. See Parker v. Time Warner Entertainment Co., L.P., 198 F.R.D. 374, 376, 381 (E.D.N.Y.2001).[2] If, as seems likely, the Defendant sold this information at a fixed amount per subscriber, it would seem that a claim to disgorge the resulting profit and distribute it pro rata to the class members would not involve any individual variations of the sort that would render these damages "non-incidental." Of course, all of these considerations concerning damages will not matter if the District Court, on remand, renews its decision to certify a (b)(2) class only for the claims for injunctive and declaratory relief or declines to certify any (b)(2) class.
 
 2. (b)(3) Issues
 
 51
 By seeking to collect statutory damages of $1,000 for each of up to 12 million cable subscribers, this lawsuit could potentially impose on Defendant Time Warner liability for $12 billion. Even for one of the world's largest corporations, that is a lot of money.[3] A claim of this sort creates a tension between the statutory provisions for minimum damages and the Rule 23 provisions for class actions that probably was not within the contemplation of those who promulgated either the statute or the rule. At first glance, the tension appears to admit of only two possibilities: (1) the class certification motion is granted, and, if the allegations are proven, Time Warner becomes liable for damages of up to $12 billion, or (2) the class certification motion is denied, and each victim of Time Warner's alleged violations remains free to pursue an individual claim for $1,000 (or the alternative daily minimum recovery or actual damages). Both options are unsatisfactory.
 
 
 52
 The first option might well encounter due process objections, somewhat analogous to those that the Supreme Court recently identified in setting constitutional limits on punitive damages. See, e.g., State Farm Mutual Automobile Insurance Co. v. Campbell, ___ U.S. ___, ___ - ___, ___, 123 S.Ct. 1513, 1520-21, 1526, 155 L.Ed.2d 585 (2003) ("The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor."); Cooper Industries, Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 433-35, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001); BMW of North America, Inc. v. Gore, 517 U.S. 559, 585-86, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). Although statutory damages amounts might be calculated in part to compensate for actual losses that are difficult to quantify, they are often also motivated in part by a pseudo-punitive intention to "address and deter overall public harm." Texas v. American Blastfax, Inc., 121 F.Supp.2d 1085, 1090 (W.D.Tex. 2000) (upholding constitutionality of statutory damages provision of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (2000)); see also Saint Louis, Iron Mountain & Southern Ry. Co. v. Williams, 251 U.S. 63, 66, 40 S.Ct. 71, 64 L.Ed. 139 (1919) (in setting a statutory penalty, the state may "adjust its amount to the public wrong rather than the private injury."); cf. State Farm, ___ U.S. at ___ - ___, ___, 123 S.Ct. at 1520-21, 1526 ("punitive damages serve a broader function [than compensatory damages]; they are aimed at deterrence and retribution."). A statutory penalty may violate due process where the penalty prescribed is "so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." Williams, 251 U.S. at 66-67, 40 S.Ct. 71. Even if a massive aggregation of minimum statutory damages survives constitutional scrutiny, there is a substantial question whether the Congress that authorized payments of $1,000 for victimized cable subscribers expected 12 million of them each to receive such an amount for a somewhat technical violation.
 
 
 53
 The second option remits each victim to a separate lawsuit, needlessly clogging the courts with repetitious suits if many are filed, or rewarding some law violators with liability for only a slight amount of total damages if, as seems more likely, few suits are filed.[4] Cf. Henry v. Cash Today, Inc., 199 F.R.D. 566, 573 (S.D.Tex.2000) (certifying class for claims under Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 et seq. (2000), and finding that $1,000 minimum statutory award under TILA was insufficient to motivate individuals to bring meritorious claims).
 
 
 54
 I think a third alternative is warranted in order to achieve to a considerable extent the objectives of both the statute and the class action rule. The statute could be construed to authorize an award of substantially less than $1,000 to all but the initially named plaintiffs who instituted the class action. I recognize that this approach cannot be reconciled with the terms of the statute, and for some that would be an insuperable obstacle. But in my view and that of many others, statutes are not to be applied according to their literal terms when doing so achieves a result manifestly not intended by the legislature. See, e.g., Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982) ("[I]n rare cases the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters, and those intentions must be controlling."); Church of the Holy Trinity v. United States, 143 U.S. 457, 459, 12 S.Ct. 511, 36 L.Ed. 226 (1892) ("It is a familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers."); Salute v. Stratford Greens Garden Apartments, 136 F.3d 293, 297 (2d Cir.1998) ("The plain meaning of a statute may not be controlling in those rare cases where literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.") (quotation marks omitted). I do not believe that in specifying a $1,000 minimum payment for Cable Act violations, Congress intended to expose a cable television provider to liability for billions of dollars. Nor do I believe that Congress intended to permit a violator to avoid payment of at least some compensation to numerous victims of its violations simply because its actions affected a large number of subscribers. Perhaps, as the Court's opinion seems to imply, the Due Process Clause creates a constitutional limit upon an aggregation of statutory damages. But I hesitate to rely on a novel theory of constitutional law when a sensible interpretation of a statute, construed against a background of possible constitutional concerns, is available.[5] See Edward J. DeBartolo Corp. v. Florida Gulf Coast Building and Construction Trades Council, 485 U.S. 568, 575, 108 S.Ct. 1392, 99 L.Ed.2d 645, (1988) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress.").
 
 
 55
 Even if possible due process concerns or statutory construction to avoid a bizarre result not intended by Congress might not independently require limiting an aggregate statutory damages award, such considerations would seem appropriate to inform the customarily broad discretion of a district judge in the context of class certification. Judges have used their discretion to determine the appropriate scope of a class, see, e.g., American Timber & Trading Co. v. First National Bank, 690 F.2d 781, 787 (9th Cir.1982) (affirming judicial creation of a subclass as being "within the district court's broad power under Fed. R.Civ.P. 23(d) to adopt procedural innovations to facilitate management of the class action."); Shapiro v. Midwest Rubber Reclaiming Co., 626 F.2d 63, 71 (8th Cir. 1980) (holding that the broad discretion enjoyed by district courts in the class action context "extends to defining the scope of the class," and affirming district court's limitation of plaintiff's proposed class), and, pursuant to Rule 23(c)(4), to certify a class as to particular issues, see, e.g., Williams v. Owens-Illinois, Inc., 665 F.2d 918 (9th Cir.1982) ("It is within the discretion of the trial judge, under Rule 23(c)(4), to limit the issues in a class action to those parts of a lawsuit which lend themselves to convenient use of the class action motif.") (quotation marks omitted); Simon v. Philip Morris Inc., 200 F.R.D. 21, 28-33 (E.D.N.Y.2001) (discussing power of district court to grant partial certification or to bifurcate issues and collecting cases). I think that potential due process concerns and avoiding a result not intended by Congress can appropriately be considered by a district judge in determining that a class will be certified only up to some reasonable aggregate amount of damages. When considering statutory damages provisions authorizing sums of "not more than" stated maximums, the Ninth Circuit has not hesitated to rule that a large aggregate award in a class action exceeded a district court's discretion and should be substantially reduced. See Six (6) Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1309-11 (9th Cir.1990).[6] Determining what portion of the full amount of statutory damages will be available to a class seems not significantly different than determining what issues will be available for classwide adjudication. A district judge ought to be able to exercise informed discretion to certify a class entitled to receive no more than some specified aggregate amount.[7]
 
 
 56
 It would probably make sense to permit the named plaintiffs to recover the full $1,000 amounts specified in the statute (if they prevail on the merits) and allocate the balance of the limited aggregate amount among the other members of the class. Awarding absent class members less than the full statutory amounts is not unfair to them since it is highly unlikely that they would have brought any litigation in their own names. Moreover, the (b)(3) opt-out opportunity will afford them a chance to sue for the full $1,000 if they choose to do so.
 
 
 57
 A district court considering whether to adjust the tension between a substantial aggregation of statutory damages and the virtues of a class action by limiting the size of the awards (to all but the named plaintiffs) should make its damages ruling in the context of deciding the class certification issue, after making at least a preliminary decision as to the size of the class being considered for certification. Otherwise, the in terrorem threat of a massive award of the full statutory amounts will unfairly induce a large settlement once a class has been certified. See In re Rhone-Poulenc Rorer Inc., 51 F.3d 1293, 1297-98 (7th Cir.1995) (discussing settlement pressures imposed in class action context). It would be appropriate for a district court to explore with the parties at an early stage not only the traditional issue of the size of the class but also the novel issue of an appropriate ceiling on aggregate statutory damages for class members.
 
 
 58
 It might seem that my approach suffers from the same defect as permitting the size of the potential recovery to deny a class action altogether: the wrongdoer benefits because of the scope of its wrongdoing. However, if no (b)(3) class is certified, the wrongdoer escapes liability to all except the named plaintiffs, whereas under my approach, the wrongdoer is obliged to provide at least some compensation to all class members, and the anticipation of that result should exert the deterrent effect that Congress intended. I urge a limitation on the aggregate amount of damages either through a sensible construction of the statute or a sensible exercise of a district judge's Rule 23 discretion, rather than restricting district courts to the unattractive choice of either evolving a constitutional limitation on the aggregate recovery or else rejecting (b)(3) class certification entirely, thereby insulating a defendant from liability for some appropriate amount of damages.
 
 
 59
 * * * * * *
 
 
 60
 In light of these considerations, I concur in the decision to remand the class certification issues and agree with most of Judge Underhill's opinion.
 
 
 
 Notes:
 
 
 [1]
 One factor considered by some courts approving (b)(2) classes in which statutory damages were sought is the amount of damages to which each class member would be entitled. As one might expect, district courts have appeared more willing to hold that injunctive or declaratory relief predominates where the damages to be received by each individual class member would be minimalSee Borcherding-Dittloff, 185 F.R.D. at 566 ("[T]he potential statutory damages each plaintiff could recover under the act are nominal. If the class has over 50,000 members, each would be entitled to less than ten dollars."); Colorado Cross-Disability Coalition, 184 F.R.D. at 361 (finding that injunctive relief predominated in part because "each class member seeks only $50"); Gammon, 162 F.R.D. at 321 (finding that individual recovery of damages would be de minimis because "the requested maximum statutory damages, if awarded, would amount to approximately 13 cents per class member.").
 
 
 [2]
 It is not clear whether the District Court regarded disgorgement of profits to be within the scope of the actual damages to which the class might be entitled under the statute or to be the remedy for a state law claim. At this point, our Court need not make any ruling on the former theory, which has not been developed on appeal. As to the second theory, the District Court declined to exercise supplemental jurisdiction, although that interlocutory ruling could be reconsidered now that the class certification issue is being remanded
 
 
 [3]
 As Senator Everett Dirksen famously said in the context of the federal budget, "A billion here and a billion there, and pretty soon you're talking about real money." The New International Dictionary of Quotations 184 (Hugh Rawson & Margaret Miner eds., 1986) (quoting Senator Everett Dirksen)
 
 
 [4]
 The idea of rejecting class action certification because of the large size of an aggregation of statutory damages awards drew major support, if not its origin, from the opinion of Judge Frankel inRatner v. Chemical Bank New York Trust Co., 54 F.R.D. 412 (S.D.N.Y. 1972). In that case, Judge Frankel denied a motion for (b)(3) class certification for a class consisting of 130,000 credit card holders claiming the $100 statutory damages authorized by the Truth in Lending Act of 1968, 15 U.S.C. §§ 1601 et seq. He found "cogent and persuasive" the defendant's argument that "the proposed recovery of $100 each for some 130,000 class members would be a horrendous, possibly annihilating punishment ...." Ratner, 54 F.R.D. at 416. Although Ratner has been cited favorably by many courts, see, e.g., Kline v. Coldwell, Banker & Co., 508 F.2d 226, 234-35 (9th Cir.1974); Wilcox v. Commerce Bank of Kansas City, 474 F.2d 336, 341-47 (10th Cir.1973); In re Trans Union Corp. Privacy Litigation, 211 F.R.D. 328, 348-51 (N.D.Ill.2002); Berkman v. Sinclair Oil Corp., 59 F.R.D. 602, 608-09 (N.D.Ill.1973), I believe this is one of those rare instances where a judicial Homer nodded, see Horace, Ars Poetica 402 ("Homer himself hath been observ'd to nod."), quoted in Bartlett's Familiar Quotations (13th ed. 1951).
 
 
 [5]
 Of course, Congress would always have the option to respond to the setting of a limit on aggregate damage awards by explicitly precluding such a limit or establishing a lower or even higher limit of its ownSee Disabled in Action of Metropolitan New York v. Hammons, 202 F.3d 110, 120 (2d Cir.2000) ("We thus seek to apply the statutory framework as best we can, recognizing always that Congress has the final word and may wish to revisit the statutory scheme."); cf. 15 U.S.C. § 1640(a)(2)(B) (amendment that caps class action TILA awards at the lesser of $500,000 or 1 percent of the creditor's net worth).
 
 
 [6]
 Six (6) Mexican Workers concerned the statutory damages provision of the Farm Labor Contractor Registration Act, 7 U.S.C. § 2050a(b) (1988) (repealed), now codified at 29 U.S.C. § 1854(c)(1) (2000).
 
 
 [7]
 Procedurally, a judge might accomplish this by modifying the proposed class in the certification order. Another option would be for the judge to inform the plaintiffs, before deciding on the motion for certification but after having received argument on the subject from all parties, of the aggregate statutory amount above which (b)(3) superiority concerns would arise, and to permit the plaintiffs to amend their motion for class certification to seek reduced aggregate damages before a certification decision is rendered