14-4385
*Brecher v. Republic of Argentina*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

———————

August Term, 2015

(Argued: August 21, 2015      Decided: September 16, 2015)

Docket No. 14-4385

———————

HENRY H. BRECHER,
individually and on behalf of all others similarly situated,

*Plaintiff-Appellee,*

-v.-

REPUBLIC OF ARGENTINA,

*Defendant-Appellant.*

———————

Before:
CALABRESI, RAGGI, AND WESLEY, *Circuit Judges.*

———————

Appellant the Republic of Argentina appeals from an order entered on August 29, 2014, in the United States District Court for the Southern District of New York (Griesa, *J.*), modifying the class definition. On November 25, 2014, a panel of this Court granted permission to appeal pursuant to Federal Rule of

Civil Procedure 23(f).  Appellant argues that the District Court's new class definition violates the requirements of ascertainability contained in Rule 23 of the Federal Rules of Civil Procedure.  We agree and hold that the class definition's reference to objective criteria is insufficient to establish an identifiable and administratively feasible class.  We therefore VACATE and REMAND the case for an evidentiary hearing on damages.

CARMINE D. BOCCUZZI (Jonathan I. Blackman, Daniel J. Northrop, Jacob H. Johnston, *on the brief*), Cleary Gottlieb Steen & Hamilton LLP, New York, NY, *for Defendant-Appellant*.

JASON A. ZWEIG (Steve W. Berman, *on the brief*), Hagens Berman Sobol Shapiro LLP, New York, NY, *for Plaintiff-Appellee*.

_____

WESLEY, *Circuit Judge*:

Defining the precise class to which Argentina owes damages for its refusal to meet its bond payment obligations and calculating those damages have proven to be exasperating tasks.  In this, the fourth time this Court has addressed the methods by which damages must be calculated and the manner in which the class is defined in this case and several similar matters, *see Seijas v. Republic of Argentina* (*Seijas I*), 606 F.3d 53 (2d Cir. 2010); *Hickory Sec. Ltd. v. Republic of Argentina* (*Seijas II*), 493 F. App'x 156 (2d Cir. 2012) (summary order); *Puricelli v. Republic of Argentina* (*Seijas III*), No. 14-2104-cv(L), 2015 WL 4716474 (2d Cir. Aug.

10, 2015), we again must vacate the District Court's order and remand for specific proceedings.

By now, the factual background of these cases is all too familiar. After Argentina defaulted on between $80 and $100 billion of sovereign debt in 2001, *see Seijas I*, 606 F.3d at 55, numerous bondholders, including Appellee here and those in the related *Seijas* cases, filed suit. In Appellee's suit, the District Court entered an order on May 29, 2009, that certified a class under a continuous holder requirement, *i.e.*, the class contained only those individuals who, like Appellee, possessed beneficial interests in a particular bond series issued by the Republic of Argentina from the date of the complaint—December 19, 2006—through the date of final judgment in the District Court. *Cf. Seijas I*, 606 F.3d at 56 (same requirement in class definition).

After this Court held in *Seijas I* and *II* that the District Court's method of calculating damages was inflated and remanded with instructions to conduct an evidentiary hearing, *see Seijas I*, 606 F.3d at 58–59; *Seijas II*, 493 F. App'x at 160, the Appellee in this case offered the District Court an alternative solution to its difficulties in assessing damages—simply modifying the class definition by removing the continuous holder requirement and expanding the class to all

holders of beneficial interests in the relevant bond series without limitation as to time held. The District Court granted the motion, Argentina promptly sought leave to appeal under Rule 23(f) of the Federal Rules of Civil Procedure, and on November 25, 2014, a panel of this Court granted leave to appeal.

## DISCUSSION

We review a district court's class certification rulings for abuse of discretion, but we review *de novo* its conclusions of law informing that decision. *In re Pub. Offerings Secs. Litig.*, 471 F.3d 24, 32 (2d Cir. 2006). The District Court below neither articulated a standard for ascertainability of its new class nor made any specific finding under such a standard. Absent that analysis, we must determine whether the District Court's ultimate decision to modify the class "rests on an error of law . . . [or] cannot be located within the range of permissible decisions." *Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 18 (2d Cir. 2003) (internal quotation marks omitted). The District Court's decision rests upon an error of law as to ascertainability; the resulting class definition cannot be located within the range of permissible options.

Like our sister Circuits, we have recognized an "implied requirement of ascertainability" in Rule 23 of the Federal Rules of Civil Procedure. *In re Pub.*

4

*Offerings Secs. Litig.*, 471 F.3d at 30; *accord, e.g., Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 592–93 (3d Cir. 2012); *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970). While we have noted this requirement is distinct from predominance, *see In re Pub. Offerings Secs. Litig.*, 471 F.3d at 45, we have not further defined its content. We here clarify that the touchstone of ascertainability is whether the class is "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." 7A CHARLES ALAN WRIGHT & ARTHUR R. MILLER ET AL., FEDERAL PRACTICE & PROCEDURE § 1760 (3d ed. 1998); *see also Weiner v. Snapple Beverage Corp.*, No. 07 Civ. 8742(DLC), 2010 WL 3119452, at *12 (S.D.N.Y. Aug. 5, 2010) (a class must be "readily identifiable, such that the court can determine who is in the class and, thus, bound by the ruling" (internal quotation marks omitted)). "A class is ascertainable when defined by objective criteria that are administratively feasible and when identifying its members would not require a mini-hearing on the merits of each case." *Charron v. Pinnacle Grp. N.Y. LLC*, 269 F.R.D. 221, 229 (S.D.N.Y. 2010) (citations and internal quotation marks omitted).

On appeal, Appellee argues that a class defined by "reference to objective criteria . . . is all that is required" to satisfy ascertainability. Appellee Br. at 19.

We are not persuaded. While objective criteria may be necessary to define an ascertainable class, it cannot be the case that any objective criterion will do.[1] A class defined as "those wearing blue shirts," while objective, could hardly be called sufficiently definite and readily identifiable; it has no limitation on time or context, and the ever-changing composition of the membership would make determining the identity of those wearing blue shirts impossible. In short, the use of objective criteria cannot alone determine ascertainability when those criteria, taken together, do not establish the definite boundaries of a readily identifiable class.[2]

This case presents just such a circumstance where an objective standard—owning a beneficial interest in a bond series—is insufficiently definite to allow

---

[1] Even Appellee's principal sources for this standard use the requirement in context to observe that *subjective* criteria are inappropriate and, thus, any criteria used in defining a class need to be "objective." Appellee Br. at 20 (citing *Fears v. Wilhelmina Model Agency, Inc.*, No. 02 Civ. 4911 HB, 2003 WL 21659373, at *2 (S.D.N.Y. July 15, 2003); *In re Methyl Tertiary Butyl Ether (MBTE) Prods. Liab. Litig.*, 209 F.R.D. 323, 337 (S.D.N.Y. 2002); MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.222, at 270 (2004)). This approach accords with our prior discussions of objective criteria. *See In re Initial Pub. Offerings Secs. Litig.*, 471 F.3d at 44–45.

[2] Of course, "identifiable" does not mean "identified"; ascertainability does not require a complete list of class members at the certification stage. *See* 1 MCLAUGHLIN ON CLASS ACTIONS § 4:2 (11th ed. 2014) ("The class need not be so finely described, however, that every potential member can be specifically identified at the commencement of the action; it is sufficient that the general parameters of membership are determinable at the outset.").

ready identification of the class or the persons who will be bound by the judgment.  *See Weiner*, 2010 WL 3119452, at *12.  The secondary market for Argentine bonds is active and has continued trading after the commencement of this and other lawsuits.  *See NML Capital Ltd. v. Republic of Argentina*, 699 F.3d 246, 251 (2d Cir. 2012); *Seijas II*, 493 F. App'x at 160.  The nature of the beneficial interest itself and the difficulty of establishing a particular interest's provenance make the objective criterion used here, without more, inadequate.  *See Bakalar v. Vavra*, 237 F.R.D 59, 65–66 (S.D.N.Y. 2006) (necessity of individualized inquiries into provenance of artwork made class insufficiently "precise, objective and presently ascertainable" (internal quotation marks omitted)).

Appellee argues that the class here is comparable to those cases involving gift cards, which are fully transferable instruments.  However, gift cards are qualitatively different:  For example, they exist in a physical form and possess a unique serial number.  By contrast, an individual holding a beneficial interest in Argentina's bond series possesses a right to the *benefit* of the bond but does not hold the physical bond itself.  Thus, trading on the secondary market changes only to whom the benefit enures.  Further, all bonds from the same series have the same trading number identifier (called a CUSIP/ISIN), making it practically

impossible to trace purchases and sales of a particular beneficial interest.  Thus, when it becomes necessary to determine who holds bonds that opted into (or out of) the class, it will be nearly impossible to distinguish between them once traded on the secondary market.  *See Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 567 (S.D.N.Y. 2014) (observing that ascertainability requirement "prevent[s] the certification of a class whose membership is truly indeterminable" (internal quotation marks omitted)).

A hypothetical illustrates this problem.  Two bondholders—*A* and *B*—each hold beneficial interests in $50,000 of bonds.  *A* opts out of the class, while *B* opts in.  Both *A* and *B* then sell their interests on the secondary market to a third party, *C*.  *C* now holds a beneficial interest in $100,000 of bonds, half inside the class and half outside the class.  If *C* then sells a beneficial interest in $25,000 of bonds to a fourth party, *D*, neither the purchaser nor the court can ascertain whether *D*'s beneficial interest falls inside or outside of the class.[3]  Even if there were a method by which the beneficial interests could be traced, determining class membership would require the kind of individualized mini-hearings that

---

[3] This hypothetical was posed by the panel at oral argument; counsel for Appellee was unable to offer a method by which the District Court would be able to make this determination.

run contrary to the principle of ascertainability. *See Charron*, 269 F.R.D. at 229; *Bakalar*, 237 F.R.D. at 64–66. The features of the bonds in this case thus make the modified class insufficiently definite as a matter of law. Although the class as originally defined by the District Court may have presented difficult questions of calculating damages, it did not suffer from a lack of ascertainability. The District Court erred in attempting to address those questions by introducing an ascertainability defect into the class definition.

There remains the question of determining damages on remand. Given that Appellee here is identically situated to the *Seijas* plaintiffs and this Court has already addressed the requirements for determining damages in those cases, we conclude that the District Court should apply the same process dictated by *Seijas II* for calculating the appropriate damages:

> Specifically, it shall: (1) consider evidence with respect to the volume of bonds purchased in the secondary market after the start of the class periods that were not tendered in the debt exchange offers or are currently held by opt-out parties or litigants in other proceedings; (2) make findings as to a reasonably accurate, non-speculative estimate of that volume based on the evidence provided by the parties; (3) account for such volume in any subsequent damage calculation such that an aggregate damage award would "roughly reflect" the loss to each class, *see Seijas I,* 606 F.3d at 58–59; and (4) if no reasonably accurate, non-speculative estimate

9

can be made, then determine how to proceed with awarding damages on an individual basis. Ultimately, if an aggregate approach cannot produce a reasonable approximation of the actual loss, the district court must adopt an individualized approach.

493 F. App'x at 160; *see also Seijas III*, 2015 WL 4716474, at *4 (repeating instructions). The hearing will ensure that damages do not "enlarge[] plaintiffs' rights by allowing them to encumber property to which they have no colorable claim." *Seijas I*, 606 F.3d at 59.

**CONCLUSION**

Because we conclude the District Court's order violated the requirement of ascertainability contained in Rule 23, it is not necessary for us to reach the remaining issues raised by Appellant. Therefore, for the reasons stated above, the order of the District Court is VACATED, and the case is REMANDED for an evidentiary hearing on damages.