UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

No. 09-1632

---

PATRICK STILLMOCK; JEANNE STILLMOCK; JENNY BARNSTEIN; LEONID
OPACIC, individually and on behalf of a class of all those
similarly situated,

Plaintiffs - Appellants,

v.

WEIS MARKETS, INCORPORATED,

Defendant - Appellee.

---

Appeal from the United States District Court for the District of
Maryland, at Baltimore.   Marvin J. Garbis, Senior District
Judge.  (1:07-cv-01342-MJG)

---

Argued:  March 23, 2010                    Decided:  July 1, 2010

---

Before TRAXLER, Chief Judge, WILKINSON, Circuit Judge, and
HAMILTON, Senior Circuit Judge.

---

Vacated and remanded by unpublished opinion.  Senior Judge
Hamilton wrote the opinion, in which Chief Judge Traxler joined.
Judge Wilkinson wrote a separate opinion concurring specially.

---

**ARGUED:** Martin Eugene Wolf, QUINN, GORDON & WOLF, CHTD, Towson,
Maryland, for Appellants.  Charles Mikell Hart, DUANE MORRIS,
LLP, Cherry Hill, New Jersey, for Appellee.  **ON BRIEF:** Richard
S. Gordon, Benjamin H. Carney, QUINN, GORDON & WOLF, CHTD,
Towson, Maryland; Cory L. Zajdel, Z LAW, LLC, Towson, Maryland;
Katherine B. Bornstein, BARROWAY, TOPAZ, KESSLER, MELTZER &
CHECK, Radnor, Pennsylvania; David A. Searles, DONOVAN SEARLES,

LLC, Philadelphia, Pennsylvania, for Appellants. Dana B. Klinges, Robert M. Palumbos, DUANE MORRIS, LLP, Philadelphia, Pennsylvania, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

HAMILTON, Senior Circuit Judge:

In an effort to curb identity theft, Congress enacted the Fair and Accurate Credit Transactions Act of 2003 (FACTA), thereby amending the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681 - 1681x, to provide that "no person that accepts credit cards or debit cards for the transaction of business shall [electronically] print more than the last 5 digits of the card number . . . upon any receipt provided to the cardholder at the point of the sale or transaction."  15 U.S.C. § 1681c(g)(1). This statutory provision is commonly known as FACTA's truncation requirement.  "Any person who willfully fails to comply with" FACTA's truncation requirement "with respect to any consumer is liable to that consumer in an amount equal to the sum of . . . any actual damages sustained by the consumer as a result of the failure or [statutory] damages of not less than $100 and not more than $1,000," id. § 1681n(a)(1)(A), plus "such amount of punitive damages as the court may allow," id. § 1681n(a)(2), and, "in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court," id. § 1681n(a)(3).[1]

---

[1] FCRA also imposes liability for negligent violations of FACTA's truncation requirement, 15 U.S.C. § 1681o(a), but such provision is not at issue in the present appeal.

In this interlocutory appeal, plaintiff-appellants Patrick Stillmock, Jeanne Stillmock, Jenny Barnstein, and Leonid Opacic (collectively Plaintiffs) challenge the district court's denial of their motion for class action certification on behalf of themselves and all other customers of retail stores owned and operated by Weis Markets, Inc. (Weis Markets), which customers received credit card and debit card receipts printed in violation of FACTA's truncation requirement.[2] The putative class expressly excluded customers of Weis Markets' stores who suffered actual damages due to identity theft and any persons who had ever been executives of Weis Markets. For reasons that follow, we vacate the district court's denial of Plaintiffs' motion for class certification and remand for further proceedings.[3]

---

[2] Originally, Patrick Stillmock and Jeanne Stillmock filed their own separate action seeking class action certification, Jenny Barnstein filed her own seeking the same, as well did Leonid Opacic. The district court subsequently dismissed the actions filed by Jenny Barnstein and Leonid Opacic and added them as plaintiffs in the action filed by the Stillmocks. Stillmock v. Weis Markets, Inc., 2009 WL 595642 *1 (D. Md. March 5, 2009).

[3] On June 3, 2009, we granted Plaintiffs' petition for permission to file this interlocutory appeal.

I.

Federal Rule of Civil Procedure 23 "states that '[a] class action may be maintained' if two conditions are met:  The suit must satisfy the criteria set forth in subdivision (a) (i.e., numerousity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)."  Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 130 S. Ct. 1431, 1437 (2010) (quoting Fed. R. Civ. P. 23).  The only category described in subdivision (b) at issue in the present appeal is subdivision (b)(3), which is satisfied if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The same subdivision further provides:

The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

- 5 -

Id.  Notably, "'[c]ertification is only concerned with the commonality (not the apparent merit) of the claims and the existence of a sufficiently numerous group of persons who may assert those claims.'"  Brown v. Nucor Corp., 576 F.3d 149, 152 (4th Cir. 2009) (quoting Lilly v. Harris-Teeter Supermarket, 720 F.2d 326, 332-33 (4th Cir. 1983)), cert. denied, Nucor Corp. v. Brown, 130 S. Ct. 1720 (2010).

"When deciding a motion for class certification, a district court does not accept the plaintiff's allegations in the complaint as true; rather, an evidentiary hearing is typically held on the certification issue."  Monroe v. City of Charlottesville, Va., 579 F.3d 380, 384 (4th Cir. 2009), cert. denied, 130 S. Ct. 1740 (2010).  Here, the district court accepted materials submitted by the parties in regard to Plaintiffs' motion for class action certification and held an evidentiary hearing thereon.  Unless otherwise specified, we rely upon the factual findings made by the district court in ruling on Plaintiffs' motion for class certification in our analysis of the issues on appeal.

Patrick and Jeanne Stillmock, husband and wife, and Jenny Barnstein all reside in Maryland, while Leonid Opacic resides in Pennsylvania.  Weis Markets is a Pennsylvania corporation, which owns and operates grocery stores throughout Maryland, Pennsylvania, New Jersey, West Virginia, and New York.

- 6 -

Despite being enacted on December 3, 2003, FACTA gave merchants who accept credit cards and/or debit cards either one or three years to comply, depending upon when the "cash register or other machine or device that electronically prints receipts for credit card or debit card transactions" was first put to use. 15 U.S.C. § 1681c(g)(3). For purposes of considering Plaintiffs' motion for class certification, the district court assumed January 1, 2005 constituted FACTA's effective date with respect to Weis Markets. Based upon that assumption, the district court found that, starting no later than January 1, 2005, and continuing until about June 2007, Weis Markets provided to its customers, paying either by credit or debit card, receipts that had printed thereon a total of ten digits of their respective card numbers (the first six and the last four). The district court next found that "[w]hile the record does not permit a more precise estimate, it appears that at least a million of such receipts were provided to a hundred thousand or more individual customers."[4] Stillmock, 2009 WL 595642 at *1. Notably, FCRA defines the term "consumer" as "an individual." 15 U.S.C. § 1681a(c).

---

[4] Weis Markets estimates that it printed 14,578,600 FACTA violative receipts between December 4, 2006 and June 7, 2007 (the date on which Weis Markets adjusted all of its point-of-sale electronic receipt systems to print no more than the last four digits of a customer's credit or debit card number).

Plaintiffs' motion for class certification proposed that the district court certify a class consisting of the following individuals:

> "All persons in the United States to whom, or after the effective and applicable dates for FACTA compliance and continuing through resolution of this case, received from Defendant at any of its retail locations, an electronically printed receipt at the point of sale or transaction which contained more than the last five digits of the person's credit or debit card number."

Stillmock, 2009 WL 595642 at *1. In addition to persons who have ever been executives of Weis Markets, "[e]xcluded from the [putative] Class are those individuals who have suffered actual damages due to identity theft caused by Defendant's FACTA violations." Id. at *2.

The district court first held that Plaintiffs' purported class action satisfied each of Rule 23(a)'s four criteria. Notably, Weis Markets does not argue on appeal that the district court erred in so holding. However, because the district court's findings with respect to Rule 23(a)'s four criteria provide context for our discussion of the Rule 23(b)(3) issues on appeal, we take time to set forth such findings at this point.

The first criterion is satisfied if the putative class is "so numerous that joinder of all members is impracticable."

Fed. R. Civ. P. 23(a)(1).  With respect to the first criterion, the district court found:

> All the members of the proposed class--consisting of a substantial percentage of those persons who made at least one credit or debit card purchase at a Weis store during a period alleged to be almost 18 months-- could not practically be joined as party Plaintiffs herein.

Stillmock, 2009 WL 595642 at *2.

The second criterion is satisfied if there are "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2). With respect to the second criterion, the district court found:

> There is no doubt that the claims of all the putative class members present common questions of fact and law regarding Weis' liability.  At the heart of each class members' claims are the undisputed fact that Weis failed to comply with Section 1681c(g) and the highly disputed question of whether Weis' failure to comply was willful.  While there may be some issues not common to all putative class members, for example whether a particular claimant was a "consumer" under the statute, there is no doubt that there are questions of law and fact pertinent to liability that are common to . . . all members of the proposed class.

Stillmock, 2009 WL 595642 at *2 (footnotes omitted).  Notably, the Supreme Court has interpreted the phrase "willfully fails to comply," in the preamble sentence of 15 U.S.C. § 1681n(a), as reaching not only knowing violations of FCRA, but reckless ones as well, Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57 (2007), and has defined a reckless violation for purposes of § 1681n(a) as one "entailing an unjustifiably high risk of harm that is

- 9 -

either known or so obvious that it should be known," id. at 68 (internal quotation marks omitted).

The third criterion is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class . . . ." Fed. R. Civ. P. 23(a)(3). In finding this criterion satisfied, the district court credited Plaintiffs' claims that each is a typical customer of Weis Markets and relied upon the fact that Weis Markets agreed that its pertinent intent was the same with respect to all receipts that it had issued in violation of FACTA's truncation requirement.

The fourth criterion is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). With respect to this fourth criterion, the district court found Plaintiffs and their counsel would fairly and adequately protect the interests of the putative class members, which members all have the same interest in establishing willfulness on the part of Weis Markets.

Turning to the district court's Rule 23(b)(3) analysis, the district court first determined that although there would be an individualized question as to each putative class member's status as a consumer, in view of the simplicity of the consumer status questions, it would assume the common question of Weis Markets' willfulness predominated over the individualized

- 10 -

questions of consumer status. 15 U.S.C. § 1681n(a)(1)(A). The district court next assumed "that Plaintiffs could propose methods satisfactorily to solve with the myriad of practical problems created by certifying the class that they seek." Stillmock, 2009 WL 595642 at *4. In this regard, the district court "assume[d] that the requested class would include only 'consumers' who received violative receipts and would not have, or at least would agree not to claim, more than $100 in actual damages." Id.

Interpreting FCRA's provision concerning a defendant's civil liability, in general, for willful noncompliance with a FCRA requirement,[5] see 15 U.S.C. § 1681n(a)(1)(A), the district court next rejected Plaintiffs' contention that a jury could decide that every class member should receive the same amount of statutory damages by considering only matters pertaining to Weis Markets and common to each and every class member. According to the district court, "a jury could properly consider, in deciding the discretionary amount between $100 and $1,000 to award a given class member, the number of times that [a] class member was issued a non-compliant slip," reasoning that a one-time customer who received a single noncompliant receipt should

---

[5] Remember that FACTA's truncation requirement is one of FCRA's requirements.

- 11 -

receive a lesser amount of statutory damages than a repetitive customer who received dozens of noncompliant receipts over an extended period of time. Stillmock, 2009 WL 595642 at *4. The district court applied the same reasoning in concluding that individualized factors could come into play in the jury's award of punitive damages per class member.

The district court next held that "there would be a slight predominance of common questions" of liability over individualized questions of liability, given the relative complexity of the willfulness issue and the relative simplicity of the consumer status issue with respect to each putative class member.[6] Stillmock, 2009 WL 595642 at *5.

Nonetheless, the district court denied class certification on two grounds. First, the district court denied class certification on the ground that determining the quantum of damages with respect to each class member would be too individualized for class-wide treatment under Rule 23(b)(3). Second, the district court denied class certification on the ground that a class action as requested by Plaintiffs "would not be superior and, indeed, would be inferior to having the

---

[6] In order to invoke consumer status under FCRA, each putative class member would merely need to show that he or she was an "individual," 15 U.S.C. § 1681a(c), as opposed to a partnership, corporation, etc., id., § 1681a(b).

- 12 -

Plaintiffs herein proceed on their individual claims and, if they prevail, having them obtain whatever statutory and punitive damages might be awarded together with their costs, including reasonable legal fees." Stillmock, 2009 WL 595642 at *6. In this regard, the district court continued:

> Should these Plaintiffs prevail on their willfulness claim, other similarly situated Weis customers would have the opportunity to file their own actions -- for many, if not most, in a court that may be more convenient for them than the District of Maryland. Moreover, it appears likely that Weis would be collaterally estopped from denying willfulness. See Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322 (1979).

Id. This appeal followed.


II.

On appeal, Plaintiffs challenge the district court's denial of their motion for class action certification. We review a district court's denial of class action certification for abuse of discretion, "recognizing, of course, that this discretion must be exercised within the framework of Rule 23." Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 424 (4th Cir. 2003) (internal quotation marks omitted).

A. Rule 23(b)(3)'s Commonality-Predominance Requirement.

Plaintiffs first contend that a consumer is entitled to statutory damages pursuant to 15 U.S.C. § 1681n(a)(1)(A) on a per violation basis, as opposed to a per consumer basis as

- 13 -

implicitly held by the district court, and therefore, the district court's concern that the quantum of statutory damages to be awarded with respect to each class member would be too individualized for class-wide treatment was unfounded. While we agree with the district court's implicit holding that statutory damages under § 1681n(a)(1)(A) are to be awarded on a per consumer basis, we also agree with Plaintiffs that the district court erred in concluding that individual issues of damages would predominate over issues common to the class.

Critically, Rule 23(b)(3)'s commonality-predominance test is qualitative rather than quantitative. Gunnells, 348 F.3d at 429. Thus, while courts have properly denied class certification where individual damages issues are especially complex or burdensome, see, e.g., Pastor v. State Farm Mut. Auto. Ins. Co., 487 F.3d 1042, 1047 (7th Cir. 2007), where, as here, the qualitatively overarching issue by far is the liability issue of the defendant's willfulness, and the purported class members were exposed to the same risk of harm every time the defendant violated the statute in the identical manner, the individual statutory damages issues are insufficient to defeat class certification under Rule 23(b)(3). See Murray v. GMAC Mortg. Corp., 434 F.3d 948, 953 (7th Cir. 2006) ("Refusing to certify a class because the plaintiff decides not to make the sort of person-specific arguments that render class

- 14 -

treatment infeasible would throw away the benefits of consolidated treatment. Unless a district court finds that personal injuries are large in relation to statutory damages, a representative plaintiff must be allowed to forego claims for compensatory damages in order to achieve class certification."); Smilow v. Southwestern Bell Mobile Systems, Inc., 323 F.3d 32, 40 (1st Cir. 2003) ("The individuation of damages in consumer class actions is rarely determinative under Rule 23(b)(3). Where . . . common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain."). Here, the putative class members were exposed to the identical risk of identity theft in the identical manner by the repeated identical conduct of the same defendant, and none suffered actual damages from identity theft. Under these circumstances, it strains credulity to conclude that the individual damages issues presented by the purported class which Plaintiffs seek to certify would be anything other than simple and straightforward. Pragmatically, the only substantive difference between putative class members for purposes of affixing the statutory damages figure within the statutory damages range of $100 to $1,000 or in awarding punitive damages is the number of receipts received by a single class member during the approximately eighteen months at issue. And indeed, this difference does not

complicate matters very much at all given that the class can be broken down into subcategories based upon the number of violating receipts received per putative class member. In sum, we hold that common questions of law and fact predominate over the individual issues presented by Plaintiffs' purported class action, thus satisfying Rule 23(b)(3)'s commonality-predominance test. See Klay v. Humana, Inc., 382 F.3d 1241, 1255 (11th Cir. 2004) ("Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief.") (internal quotation marks and alteration marks omitted).

B. Rule 23(b)(3)'s Superiority Requirement.

We now turn to consider the district court's ruling that Plaintiffs' purported class action failed Rule 23(b)(3)'s second requirement, i.e., that the purported class action be superior to other available methods for the fair and efficient adjudication of the controversy. Plaintiffs challenge the district court's superiority ruling on the basis that the district court impermissibly looked outside of Rule 23 to find the test-case method more to its liking, though not actually superior to the class action. Under the test-case method, if Plaintiffs win their individual claims against Weis Markets in a non-class action, other similarly situated Weis Markets

- 16 -

customers would have the opportunity to file their own individual actions against Weis Markets and assert offensive collateral estoppel on the issues of liability and willfulness.

We agree with Plaintiffs that the district court erred in its superiority-of-method determination. As the well-respected treatise Federal Practice and Procedure explains the relevant considerations:

> Although a determination of superiority necessarily depends greatly on the circumstances surrounding each case, some generalizations can be made about the kinds of factors the courts will consider in evaluating this portion of Rule 23(b)(3).
>
> The rule requires the court to find that the objectives of the class-action procedure really will be achieved in the particular case. In determining whether the answer to this inquiry is to be affirmative, the court initially must consider what other procedures, if any, exist for disposing of the dispute before it. The court must compare the possible alternatives to determine whether Rule 23 is sufficiently effective to justify the expenditure of the judicial time and energy that is necessary to adjudicate a class action and to assume the risk of prejudice to the rights of those who are not directly before the court.

7AA Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1779 (3d ed. 2005).

Here, the district court held that a test case by Plaintiffs and then future plaintiffs asserting offensive collateral estoppel with respect to liability issues was a superior litigation method to the class action method proposed

- 17 -

by Plaintiffs.  The totality of the district court's analysis on this issue is as follows:

> [T]he Court concludes that [a class action as requested by Plaintiffs] would not be superior and, indeed, would be inferior to having the Plaintiffs herein proceed on their individual claims and, if they prevail, having them obtain whatever statutory and punitive damages might be awarded together with their costs, including reasonable legal fees.  Should these Plaintiffs prevail on their willfulness claim, other similarly situated Weis customers would have the opportunity to file their own actions -- for many, if not most, in a court that may be more convenient for them than the District of Maryland.  Moreover, it appears likely that Weis would be collaterally estopped from denying willfulness.

Stillmock, 2009 WL 595642 at *6.

Other than the inconvenience of the forum consideration, the district court's analysis fails to explain why it believes the class action method is inferior to the test-case-with-future-individual-actions method.  Apparently sensing the shallowness of the district court's analysis, Weis Markets argues that the availability of attorney's fees and punitive damages under FCRA makes individual lawsuits feasible.

Weis Markets' argument is without merit.  First, the low amount of statutory damages available means no big punitive damages award on the horizon, thus making an individual action unattractive from a plaintiff's perspective.  Second, there is no reasoned basis to conclude that the fact that an individual plaintiff can recover attorney's fees in addition to statutory

- 18 -

damages of up to $1,000 will result in enforcement of FCRA by individual actions of a scale comparable to the potential enforcement by way of class action. See Bertulli v. Independent Ass'n of Continental Pilots, 242 F.3d 290, 299 (5th Cir. 2001) (Rule 23(b)(3)'s superiority requirement was met by class of pilots bringing action under Labor-Management Reporting and Disclosure Act (LMRDA) and Railway Labor Act alleging they suffered loss of seniority as result of restoration of seniority of 11 strike participants; any relief received by vast majority of class members would be primarily injunctive, feasibility of individual actions due to availability of attorney's fees under LMRDA did not undercut conclusion that class device was superior, and, although some damages calculations might be burdensome, economies weighed in favor of class treatment); Tchoboian v. Parking Concepts, Inc., 2009 WL 2169883 at *9 (C.D. Cal. July 16, 2009) ("The Court is not convinced that the fact that an individual plaintiff can recover attorney's fees in addition to statutory damages of up to $1,000 will result in enforcement of the FCRA by individual actions of a scale comparable to the potential enforcement by way of class action.").

Other factors also cut definitively in favor of concluding that the class action which Plaintiffs propose is superior to individual cases. First, there is no indication in this case

- 19 -

that class members would have a strong interest in individual litigation. Second, class certification promotes consistency of results, giving Weis Markets the benefit of finality and repose. Gunnells, 348 F.3d at 429 (in contrast to class action proceeding, individual actions make a defendant vulnerable to the asymmetry of collateral estoppel, thus, class certification promotes consistency of results, giving defendant benefit of finality and repose).

## III.

In sum, we hold the grounds upon which the district court relied to deny class action certification in this case are untenable, and therefore, the district court abused its discretion in denying class certification on such grounds. See Murray, 434 F.3d at 954 (reversing denial of class certification in action for statutory damages under FCRA). Accordingly, we vacate and remand for further proceedings. Finally, while we express no opinion regarding Weis Markets' additional arguments against class certification which the district court expressly did not address below, see Stillmock, 2009 WL 595642 at *6, we instruct the district court to consider them on remand in the

first instance.[7]  <u>Singleton v. Wulff</u>, 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.").

<u>VACATED AND REMANDED</u>

---

[7] We also leave it to the district court's discretion whether to revisit Weis Markets' argument that class treatment would not be manageable because Plaintiffs cannot send adequate notice to the purported class members.  The district court appeared to assume without deciding that Plaintiffs could send adequate notice to purported class members.  We express no opinion on this issue.

WILKINSON, Circuit Judge, concurring specially:

There is much in the court's opinion with which I agree. I am pleased that the court adopts a per-consumer rather than a per-receipt interpretation of 15 U.S.C. § 1681n(a).[*] Additionally, I agree with the court that the district court on remand should consider other factors that bear upon the issue of class certification. Specifically, neither this court nor the district court has yet addressed the real possibility that the suggested class could bankrupt an entire chain of supermarkets, and the district court retains wide discretion in deciding whether to certify a class in light of that problem.

I worry that the exponential expansion of statutory damages through the aggressive use of the class action device is a real

---

[*] Section 1681n provides that any person who willfully violates the statute "with respect to any consumer is liable to that consumer" for, among other things, actual or statutory damages. 15 U.S.C. § 1681n(a) (emphasis added). The statute's emphasis on the consumer reflects a per-consumer rather than a per-receipt approach to damages. This interpretation draws additional support from Safeco Insurance Company of America v. Burr, 551 U.S. 47 (2007), where the Supreme Court read the statute to provide that "the consumer may have actual damages, or statutory damages . . ., and even punitive damages." Id. at 53 (emphasis added). Moreover, were we to adopt a per-receipt approach, FACTA would be transformed from a shield for protecting consumer privacy into a sword for dismembering businesses. Opportunistic cardholders could intentionally make hundreds, if not thousands, of purchases, hoard their receipts, and stream into federal court to collect statutory damages on each one. The potential for such abuse counsels against the plaintiffs' preferred per-receipt interpretation.

jobs killer that Congress has not sanctioned. To certify in cases where no plaintiff has suffered any actual harm from identity theft and where innocent employees may suffer the catastrophic fallout could not have been Congress's intent. Indeed, the relatively modest range of statutory damages chosen by Congress suggests that bankrupting entire businesses over somewhat technical violations was not among Congress's objectives.

It is undeniable that Congress passed FACTA to protect consumers from the real threat of identity theft. It is clear as well that Congress did not intend willful repeat violators of FACTA to emerge from litigation with nothing more than a wrist slap. It is understandable too that this court and many others have struggled with the interaction of FACTA and Federal Rule of Civil Procedure 23. I see nothing in the statute, however, that mandates class action treatment of FACTA claims or precludes a district court from considering the prospect of annihilative liability in the certification calculus.

I.

Certainly nothing in 15 U.S.C. § 1681n(a)(1) would lead us to believe that Congress intended the modest range of statutory damages to be transformed into corporate death by a thousand cuts through Rule 23. "A claim of this sort creates a tension

between the statutory provisions for minimum damages and the Rule 23 provisions for class actions that probably was not within the contemplation of those who promulgated either the statute or the rule." Parker v. Time Warner Entertainment Co., 331 F.3d 13, 26 (2d Cir. 2003) (Newman, J., concurring). Simply put, the present case is a perfect storm in which two independent provisions combine to create commercial wreckage far greater than either could alone. As Judge Newman explained in a similar situation involving statutory damages for cable subscribers, "I do not believe that in specifying a $1,000 minimum payment for . . . violations, Congress intended to expose [violators] to liability for billions of dollars." Id. at 27. The same statement applies with equal force to FACTA's $100 to $1,000 statutory damages range.

## A.

The statute itself affords reason to believe that Congress did not insist on adopting the class mechanism at all costs. Regardless of whether common liability issues in this case predominate over individualized damage determinations, it remains true that Congress did provide for individualized damage determinations in FACTA. This fact cuts against the argument that Congress wished to compel consolidated suits through class certification.

There are several indications in FACTA that damages are individualized. First, statutory damages are not fixed; instead, Congress provided that they may range anywhere from $100 to $1,000. 15 U.S.C. § 1681n(a)(1)(A). The statute does not specify what factors a jury should consider when selecting a number within this range. But because statutory damages are intended to address harms that are small or difficult to quantify, evidence about particular class members is highly relevant to a jury charged with this task. Had Congress adopted a set figure for statutory damages rather than a range dependent on variable evidence, the case for class certification would have been fortified.

Second, the compensatory nature of FACTA statutory damages suggests class certification is not congressionally mandated. The most powerful indication that Congress intended statutory damages to be compensatory comes from the structure of FACTA's remedial provisions. Notably, Congress provided that a consumer subject to a willful violation of the statute could recover either actual or statutory damages, but not both. 15 U.S.C. § 1681n(a)(1)(A). The fact that statutory damages are available in lieu of actual damages suggests that they too serve to compensate individual consumers for their injuries. See In re Trans Union Corp. Privacy Litig., 211 F.R.D. 328, 342 (N.D. Ill. 2002) ("[Section] 1681n(a)(1)(A) clearly and unambiguously

allows for actual _or_ statutory damages as the measure of _compensatory_ damages.") (second emphasis added). Congress also provided for punitive damages in addition to any actual or statutory damages. 15 U.S.C. § 1681n(a)(2). That Congress did so highlights the fact that statutory damages serve a compensatory, rather than punitive, function in FACTA's remedial scheme.

It is not difficult to discern why Congress would allow consumers to select statutory damages rather than actual damages as a measure of compensation. While some violations of FACTA will lead to easily quantifiable harms, other violations may lead to less tangible ones, such as a loss of privacy, heightened risk and anxiety over identity theft, or increased time spent monitoring one's financial security. In order to help a jury place a value on these intangible harms, FACTA provides for statutory damages between $100 and $1,000. It is still up to a jury, however, to select a figure within this range, and the individualized nature of this determination is strong evidence that class treatment may not be the required course under FACTA.

B.

That the court notes (correctly, in my view) that statutory damages are available on a per-consumer rather than per-receipt basis further underscores the point that Congress did not demand

class certification in FACTA. The per-consumer perspective places the focus on the characteristics of individual class members, rather than on the defendant's conduct that is common to the entire class. To protect "the right of the defendant to present facts or raise defenses that are particular to individual class members," Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311, 318 (4th Cir. 2006), businesses deserve at least the opportunity to argue that certain individuals should receive statutory damages at the low end of the range. Weis Markets, for example, might do so by putting on evidence that some class members were issued very few noncompliant receipts, rarely if ever checked their credit reports, or experienced no heightened apprehension of identity theft. While the class here excludes those who suffered actual damages due to identity theft, it surely includes members who experienced varying levels of less quantifiable harms. Assessing these harms clearly "does not lend itself to . . . a mechanical calculation." Windham v. Am. Brands, Inc., 565 F.2d 59, 68 (4th Cir. 1977) (en banc). All of these facts suggest that Congress did not contemplate a class action as the exclusive route for FACTA suits.

II.

Congress acts, of course, against the backdrop of the Federal Rules, and we must assume it knows not only of Rule 23's utility, but also that the Rule is not an end unto itself. It is a case management device, and a flexible one at that. The Rule is the ultimate expression of flexibility, providing a non-exclusive list of broad factors for courts to consider. See Fed. R. Civ. P. 23(b)(3)(A)-(D). Notably, its flexible nature indicates that district courts have broad discretion to consider factors that may bear on the desirability of proceeding down the road of class treatment.

Certifying a class action that would impose annihilative damages where there has been no actual harm from identity theft could raise serious constitutional concerns, as plaintiffs themselves admit. See Reply Br. at 2 n.2. Other courts have noted that "the potential for a devastatingly large damages award, out of all reasonable proportion to the actual harm suffered by members of the plaintiff class, may raise due process issues." Parker, 331 F.3d at 22. See also Spikings v. Cost Plus, Inc., No. CV 06-8125-JFW (AJWx), 2007 U.S. Dist. LEXIS 44214, at *9, 13 (C.D. Cal. May 25, 2007) (same). Indeed, this principle has some salience in the punitive damages context, where the Supreme Court has noted that "[t]he Due Process Clause of the Fourteenth Amendment prohibits the

- 28 -

imposition of grossly excessive or arbitrary punishments on a tortfeasor." State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 416 (2003).

Rather than considering annihilative damages as they bear on due process, however, it is preferable for a district court to address them in the context of Rule 23(b)(3)'s superiority requirement. Doing so gives the district court discretion to avoid a serious constitutional problem in the best tradition of the Brandeis concurrence in Ashwander v. Tennessee Valley Authority, 297 U.S. 288 (1936), and permits a district court to declare that a device is not superior when a plaintiff class whose members suffered no identity theft of any sort still threatens to wipe an entire company off the map.

It is fair to observe that a primary focus of Rule 23 is upon procedural efficiencies, but that is not its sole concern. A district court has discretion to consider other factors as well. "Within that discretion . . . is the attaching of determinative weight to the reality that if class action treatment were applied in this case where the complaint contains no indication of any actual damages in substantial or provable amount, this aggregated relief would be oppressive in consequence and difficult to justify." Wilcox v. Commerce Bank of Kansas City, 474 F.2d 336, 347 (10th Cir. 1973). See also London v. Wal-Mart Stores, Inc., 340 F.3d 1246, 1255 n.5 (11th

Cir. 2003) (class action may not be superior where "the defendants' potential liability would be enormous and completely out of proportion to any harm suffered by the plaintiff."); Kline v. Coldwell, Banker & Co., 508 F.2d 226, 235 (9th Cir. 1974) (same).

Finally, the flexibility of Rule 23 is also reflected in the generous abuse of discretion standard under which district court certification decisions are reviewed. As we have repeatedly explained, "[a] district court has broad discretion in deciding whether to certify a class." Thorn, 445 F.3d at 317 (quoting Lienhart v. Dryvit Sys., Inc., 255 F.3d 138, 146 (4th Cir. 2001)). Certification decisions "will be reversed only upon a showing of abuse of that discretion." Boley v. Brown, 10 F.3d 218, 223 (4th Cir. 1993); McClain v. South Carolina Nat'l Bank, 105 F.3d 898, 902 (4th Cir. 1997) (same). We afford this discretion to district courts for good reason. Class certification is "a practical problem, and primarily a factual one with which a district court generally has a greater familiarity and expertise than does a court of appeals." Windham, 565 F.2d at 65 (citation omitted). Given this, I would urge caution in requiring district courts to adopt a procedural device that cuts against the grain of practical justice as the trial courts conceive it.

III.

A.

In light of the broad flexibility embodied in Rule 23, I am pleased that the court instructs the district court on remand to consider alternative reasons that bear upon class certification. See Maj. Op. at 20-21. Specifically, the district court previously reserved ruling on "the contention that the possibility of 'annihilating results' disproportionate to any harm renders class certification inappropriate." Stillmock v. Weis Markets, Inc., 2009 WL 595642, No. MJG-07-1342 at *6 (D. Md. March 5, 2009). The court rightly permits the district court to undertake that inquiry.

The risk of financial ruin as a result of class certification is far from illusory. Weis Markets estimates that it printed 14,578,600 receipts with improperly truncated account numbers between the time FACTA became effective on December 4, 2006 and the time the company brought its systems into compliance on June 7, 2007. Because FACTA establishes statutory damages between $100 and $1,000, under plaintiffs' per-receipt approach, Weis Markets would thus be subject to a massive payout of between $1.4 and $14 billion.

The court's per-consumer calculation, while less astronomical, is no less annihilating to Weis Markets. Both plaintiffs and Weis Markets have estimated that "there are

- 31 -

potentially over one million Class members." Multiplying that estimate by the statutory damages range results in total liability of between $100 million and $1 billion dollars, without even accounting for the possibility of punitive damages, attorney's fees, and costs, 15 U.S.C. § 1681n(a)(2), (a)(3).

It is no exaggeration to say that a judgment within this range would devastate Weis Markets. As counsel for Weis Markets put it, "a hundred million dollars sinks my client." The company is traded on the New York Stock Exchange, and its market capitalization at current prices is just over $900 million dollars. In other words, this case is not just the proverbial bet-the-company suit; a class action, if successful, will shatter the entire company into hundreds of thousands of $100 to $1,000 bits. The plaintiffs here might as well seek to distribute every one of Weis Markets' 26.9 million shares a few apiece to each receipt holder.

Nor is the destruction of Weis Markets a loss only to shareholders. If plaintiffs are successful, a substantial number of people will be left unemployed in one of the toughest job markets in generations. Weis Markets currently owns and operates one hundred sixty-four retail grocery stores in Pennsylvania, Maryland, New York, New Jersey, and West Virginia as well as twenty-five pet supply stores. Weis Markets, Inc., Annual Report (Form 10-K), at 1 (Mar. 11, 2010). Approximately

17,600 individuals work for the company in either a full- or part-time capacity.  Id. at 2.  It is doubtful that Congress intended to cause these thousands of innocent employees to lose their jobs and paychecks by bankrupting their employer, in a situation where no plaintiff suffered identity theft.

None of this is to condone the actions of Weis Markets. Without prejudging the matter of willfulness, there are preliminary indications that the company acted very badly. There is no dispute that Weis Markets printed over 14 million receipts that violated FACTA; the outstanding liability issues in this case hinge on whether it did so willfully or merely negligently.  Moreover, compliance with FACTA did not involve untangling a complex regulatory scheme, but merely issuing receipts to cardholders revealing no more than the last five digits of their card number.  Still, it must count for something that this class, by definition, consists of individuals who can claim only statutory damages.  It staggers the imagination to believe that Congress intended to impose annihilating damages on an entire company and the people who work for it for lapses of a somewhat technical nature and in a case where not a single class member suffered actual harm due to identity theft.

## B.

Nor is the problem of annihilating liability by any means limited to the present case.  District courts across the country

are struggling with what one court termed a "veritable onslaught" of class action litigation under FACTA, subjecting companies small and large to extraordinary claims. Palamara v. Kings Family Restaurants, No. 07-317, 2008 WL 1818453, at *3 (W.D. Pa. Apr. 22, 2008). Ordinarily, a company that violates FACTA will do so not once or twice, but instead thousands or even millions of times, owing to the fact that it has not properly updated its equipment. And because FACTA provides for statutory damages of at least $100, such suits almost by definition expose companies to liability that is orders of magnitude beyond their income or net worth, regardless of the size of the corporation. "FACTA class actions threaten businesses of every size with devastating classwide liability for what may be harmless statutory violations." 1 McLaughlin on Class Actions § 2:38 (6th ed.).

On one end of the spectrum, such suits jeopardize "mom and pop" stores, such as the local restaurant with a mere $40,000 in net assets that last year faced a $4.6 to $46 million FACTA suit in which none of the putative class members suffered any actual injuries as a result of identity theft. Leysoto v. Mama Mia I, Inc., 255 F.R.D. 693, 697-98 (S.D. Fla. 2009). A similar suit went a step further, seeking FACTA statutory damages "between $3.3 million and $33 million" from a company "whose consolidated financial statements . . . show[ed] a net loss of $5.5 million

- 34 -

and a total <u>negative</u> net worth of $8.1 million." <u>Price v. Lucky Strike Entertainment, Inc.</u>, No. CV 07-960-ODW (MANx), 2007 WL 4812281 at *5 (C.D. Cal. Aug. 31, 2007) (emphasis added).

And small or struggling companies are not the only ones threatened by claims far out of proportion to their ability to satisfy them. One defendant with net income of just over $68 million recently faced a putative class action seeking between $198 million and $1.98 billion. <u>Blanco v. CEC Entm't Concepts L.P.</u>, No. CV 07-0559 GPS (JWJx), 2008 WL 239658, at *2 (C.D. Cal. Jan. 10, 2008). Other corporations have faced similarly astronomical claims relative to their size. <u>See, e.g.</u>, <u>Spikings v. Cost Plus, Inc.</u>, No. CV 06-8125-JFW (AJWx), 2007 U.S. Dist. LEXIS 44214, at *12 (C.D. Cal. May 29, 2007) (company with net worth of $316 million faced FACTA class seeking $340 million to $3.4 billion); <u>Lopez v. KB Toys Retail, Inc.</u>, No. CV 07-144-JFW (CWx), 2007 U.S. Dist. LEXIS 82025, at *14 (C.D. Cal. July 17, 2007) (even $100 per violation in proposed FACTA class was 600% of defendant's net worth). I suppose it can be assumed that shareholders and creditors bear such litigation risks. But employees? These liabilities will fall hardest on those who are laid off because of them.

## C.

In addition to the risk of bankrupting entire companies for violations in which no identity theft resulted, there is an

- 35 -

additional problem with combining statutory damages and class certification.  Companies may be forced to settle in the face of such annihilating liability, even if they have a strong defense.  In such an event, the substantial costs associated with settlement will inevitably be passed on to consumers -- the very ones whom Congress sought to protect.

As the Seventh Circuit explained, there is a serious concern with forcing these "defendants to stake their companies on the outcome of a single jury trial, or be forced by fear of the risk of bankruptcy to settle even if they have no legal liability."  Matter of Rhone-Poulenc Rorer Inc., 51 F.3d 1293, 1299 (7th Cir. 1995).  Indeed, "[t]he risk of facing an all-or-nothing verdict presents too high a risk, even when the probability of an adverse judgment is low."  Castano v. Am. Tobacco Co., 84 F.3d 734, 746 (5th Cir. 1996); see also Coopers & Lybrand v. Livesay, 437 U.S. 463, 476 (1978) (same).  "[O]nce a class is certified, a statutory damages defendant faces a bet-the-company proposition and likely will settle rather than risk shareholder reaction to theoretical billions in exposure even if the company believes the claim lacks merit."  Sheila B. Scheuerman, Due Process Forgotten: The Problem of Statutory Damages and Class Actions, 74 Mo. L. Rev. 103, 104 (2009).  At least the plaintiffs in Rhone-Poulenc and Castano alleged substantial actual damages; here we face the risk of forcing a

defendant to settle in the face of billions in liability for actions that resulted in not a single instance of identity theft.

Nor does the possibility of appellate review eliminate the problem of uneconomic settlement. "The reason that an appeal will come too late to provide effective relief for these defendants is the sheer magnitude of the risk to which the class action, in contrast to the individual actions pending or likely, exposes them." Rhone-Poulenc, 51 F.3d at 1297 (emphasis in original). Weis Markets and similar companies could hardly be blamed if they took a safe route and settled in such circumstances. "If they settle, the class certification -- the ruling that will have forced them to settle -- will never be reviewed." Id. at 1298. To effectively allow certification to deprive a party of a defense cannot be what the adversary process is about.

IV.

Is there a solution -- one that gives the statute its proper meaning and effect without visiting consequences far in excess of what Congress intended? Judge Newman, when addressing a similar statute, has suggested two solutions to the problem. One is to award class members statutory damages below the amount authorized by Congress. Parker, 331 F.3d at 27 (Newman, J.

- 37 -

concurring). But as he acknowledges, that suggestion suffers a prohibitive drawback because it "cannot be reconciled with the terms of the statute." Id. His second suggestion of allowing a district judge to determine "that a class will be certified only up to some reasonable aggregate amount of [statutory] damages," id. at 28, fares little better because unlike similar exercises of judicial discretion, remittitur for example, the judiciary here would simply be adding a capping provision to a federal statute which Congress in its wisdom did not see fit to include. Congress of course remains free to adopt such a cap, as it has done for instance in limiting class action recoveries under the Truth In Lending Act to the lesser of $500,000 or 1 percent of a creditor's net worth, 15 U.S.C. § 1640(a)(2)(B), but it has not done so here.

The question, then, is whether the denial of class action treatment will allow proven violators of a statute to escape largely untouched. I do not believe that we are faced with a choice of class certification and its potentially lethal consequences or the denial of such certification and the prospect of impunity for the non-compliant.
There is no shortage of incentives for consumers to bring individual suits under FACTA. The act provides plaintiffs with both costs and reasonable attorney's fees "in the case of any successful action" establishing willful or negligent violations.

- 38 -

15 U.S.C. §§ 1681n(a)(3), 1681o(a)(2) (emphasis added). These suits are, therefore, "essentially costless" to winning plaintiffs. Anderson v. Capital One Bank, 224 F.R.D. 444, 453 (W.D. Wis. 2004). They are potentially quite rewarding as well. For one thing, actual damages remain available in any case of identity theft. 15 U.S.C. § 1681n(a)(1)(A). For another, the possibility of punitive damages exists in cases where their imposition is needed for appropriate punishment and deterrence. 15 U.S.C. § 1681n(a)(2). For a third, the possibility of offensive collateral estoppel with regard to liability exists for prospective plaintiffs, of whom in this case there are many. See Parklane Hosiery Co. v. Shore, 439 U.S. 322 (1979).

Thus I am not convinced that the denial of class certification with its possibilities of annihilative consequences would allow companies who violate the statute to emerge laughing and unscathed. FACTA "provides sufficient motivation for adversely affected individuals to bring suit and for attorneys to represent them." Campos v. ChoicePoint, Inc., 237 F.R.D. 478, 490 (N.D. Ga. 2006). This is especially so since the costs of compliance with the statute remain minor in comparison to the costs of dealing with litigation, in whatever form it may assume. For the above reasons, I believe it well within a district court's discretion to consider the magnitude of the costs upon the company and its employees that class

certification may impose. Allowing such consideration will not leave the statute toothless, nor fly in the face of any congressional mandate, nor court the constitutional problems associated with constraining district court discretion provided by Federal Rule of Civil Procedure 23. Because I do not understand the court's judgment to preclude the exercise of discretion in this manner upon remand, I respectfully offer this special concurrence.